IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**ANTHONY MARQUIS THOMAS**                                                      **PLAINTIFF**

**v.**                                                                              **No. 1:21CV22-JMV**

**LEE COUNTY**
**SGT. SMOTHERMAN**                                                             **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Anthony Marquis Thomas, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that Defendant Sergeant Smotherman used excessive force against him in violation of the Eighth Amendment prohibition against cruel and unusual punishment. The defendants, Sgt. Smotherman and Lee County, Mississippi, have moved for summary judgment; the plaintiff has responded to the motion; and the defendants have replied. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion for summary judgment will be granted, and judgment will be entered in favor of the defendants.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### Plaintiff's Account of Events

Thomas provided an account of the altercation in his sworn complaint. Doc. 1. On January 11, 2021, at the Lee County Detention Center, Sergeant Smotherman and Officer Goodwin were conducting medication call. *Id*. at 5. At 8:20 p.m., Thomas' cellmate, Jamie Burrage, left the cell to get his medicine. *Id*. Thomas stepped out of his cell to check the score of a football game. *Id*. Officer Goodwin told Thomas to get back in the cell. *Id*. Thomas did not obey the order; instead, he told Officer Goodwin that he was not hurting anything. *Id*. Officer Goodwin repeated the order, telling Thomas to get back in his cell. *Id*. Thomas states that he went back in his cell and closed the door. *Id*. By the time Burrage returned to the cell after meeting with medical, Sgt. Smotherman put on some black gloves, and Thomas turned around and put his hands behind his back. *Id*. Smotherman then kicked Thomas' left leg, causing Thomas to stumble further into the cell. *Id*. Smotherman then punched Thomas three times in the face, yelling "Get on the ground!" *Id*. Thomas fell back a bit, and Smotherman punched him three more times, placed him in handcuffs, then in the restraint chair, where Smotherman said he could stay and calm down. *Id*. Thomas stayed in the restraint chair for about an hour. *Id*. He was taken to medical the next day, January 12, 2021.[1] *Id*. at 7. Thomas states that his injuries were: (1) a knot on his left eye; (2) a swollen jaw; (3) a painful ear; (4) a headache; (5) a hurt leg; and (6) a hurt elbow. *Id*. at 6. The swelling persisted for at least four days. *Id*. He also suffered difficulty swallowing, dizziness, and lightheadedness. *Id*.

---

[1] Thomas alleges on page two of his response [37] to the summary judgment motion that he was not sent to medical for three days; however, that statement contradicts both his complaint, Doc. 1 at 7, and the medical department documents attached to the motion for summary judgment, Doc. 25-3 at 1-2.

### Smotherman's Account of Events

Sergeant Smotherman also provided a sworn statement:

[During medical call in Thomas' unit,] [a]n inmate came downstairs to receive his meds and inmate Anthony Thomas stepped out of the cell as well. Senior Officer John Goodwin ordered inmate Thomas three (3) times to go back into the cell. Inmate Thomas disregarded these orders two (2) times, and on the third time became mouthy and began cussing the officers and then slammed the door as hard as he could.

I asked for the door to be opened again so that the other inmate could return to his cell, and at this point inmate Thomas again stepped past the threshold of the door and ignored officers' orders to close the door. As I began approaching the cell, with knowledge of previous uncooperative behavior towards officers as well as violent behavior, I ordered inmate Thomas to turn around with his hands behind his back and to lower to his knees in an attempt to preserve officer safety.

Inmate Thomas both physically and verbally refused to get on his knees. I attempted to lower inmate Thomas myself, at which time he stepped into the cell, turned around, and attempted to take a quick aggressive step towards me. As I stepped into the cell, I heard my taser fall out of its holster and land on the ground. In order to defend myself and keep inmate Thomas from possibly getting the unsecured taser, I then employed a defensive strike which landed on the left upper cheek of inmate Thomas. I then attempted to take Inmate Thomas to the ground once more, to which inmate Thomas responded by beginning to flail his arms. I then pushed inmate Thomas against the right wall of the cell where his right face collided with the wall. At this time, Officer Goodwin retrieved my taser which had fallen and returned it to my possession, and inmate Thomas began cooperating and allowed us to handcuff him. Inmate Thomas was escorted to booking by Senior Officer Goodwin to be placed in the restraint chair.

Doc. 25-2, Exhibit B, Affidavit of Sgt. Smotherman.

Thomas alleges that, as a result of the altercation, he sustained a "knot on his left eye, jaw swollen big, ear hurt, hard to swallow, headache, leg hurt." Thomas was seen by the nursing staff at the jail the following day when he requested a tuberculosis skin test, but while being examined, he complained of jaw pain. Doc. 25-3, Exhibit C, Medical Record, p. 1. An x-ray was ordered and revealed no injury. Doc. 25-3, Exhibit C, Medical Record, p. 2.

## Undisputed Material Facts[2]

Most parts of the two accounts of the altercation are consistent; a few facts differ – but do not contradict each other. Some of the differences in the accounts merely involve the words chosen to describe the same event. For example, Thomas states that he "went back in [his cell] and closed the door." Doc. 1 at 5. Smotherman states that "on the third time [Thomas] became mouthy and began cussing the officers and then slammed the door as hard as he could." Doc. 25-2 at 1. Another example is Smotherman's statement that he "employed a defensive strike which landed on the left upper cheek [of Thomas]." Doc. 25-2 at 2. Thomas described that exchange differently, stating, "Sgt. Smotherman punch[ed] me in the face." Doc. 1 at 5.

The events took place at about 8:30 p.m. on January 11, 202, at the Lee Count Adult Detention Center in Tupelo, Mississippi. *Id.* At the beginning of medication call, Anthony Thomas stepped out of his cell, disobeyed the order to get back in, and argued with Officer Goodwin about it. *Id.* Thomas eventually returned to his cell. *Id.*

When his cellmate returned from getting his medications, Thomas again exited the cell – and again refused an order to go back into his cell. Doc. 25-2 at 1-2, Affidavit of Sgt. Smotherman. Smotherman then put on gloves. Doc. 1 at 5. Officer Smotherman knew that Thomas had a history of violence and disobedience towards officers – and thus told Thomas to turn around, put his hands behind his back, and get to his knees (in the interest of officer safety). Doc. 25-2 at 2, Affidavit of Sgt.

---

[2] For the purposes of this memorandum opinion, the court has taken the facts from the plaintiff's complaint, the defendants' motion for summary judgment, the plaintiff's response to that motion, and the defendants' reply. If the parties' facts contradict each other, the court has used the plaintiff's version. If the defendants' facts are not contradicted by the plaintiff's facts, then the court has used the defendant's version, and vice versa. For example, Smotherman states that his taser fell onto the floor (which elevated the risk to officer and inmate safety during the scuffle.) Thomas does not dispute that fact; as such, the court has included the taser's drop to the floor as an undisputed material fact. Similarly, Smotherman states that he ordered Thomas to turn around, put his hands behind his back, and get on his knees – but Thomas did not get on his knees. Thomas states that he turned around and put his hands behind his back, but does not state that he got on his knees; hence, in his response to the summary judgment motion, Thomas did not refute the fact that he did not get on his knees. The court has thus included Thomas' refusal to get on his knees as a material fact.

Smotherman. Thomas turned around and put his hands behind his back – but did not kneel, as ordered. *Id.*; Doc. 1 at 5. Smotherman then attempted to compel Thomas to kneel (by kicking the plaintiff's left leg from behind), and Thomas went further into the cell. Thomas turned around to face Smotherman, continuing to disobey the officer's orders.[3] Doc. 25-2 at 2. Then Smotherman's taser fell from its holster onto the floor where Thomas could have picked it up. *Id.*

At this point, Smotherman faced a noncompliant inmate with a history of hostility and violence towards prison staff – and that inmate now had access to a taser. To prevent Thomas from getting the unsecured taser, Smotherman struck him in the upper part of his left cheek and tried to take him to the ground – and struck Thomas two more times. *Id.* (Smotherman alleges one strike to the cheek); Doc. 1 at 5 (Thomas alleges three strikes). The two scuffled, and Smotherman pushed Thomas face-first against the wall, Doc. 25-2 at 2, and struck him several more times.[4] Doc. 1 at 5. Goodwin retrieved the taser and returned it to Smotherman, and Thomas began cooperating with the officers, allowing them to handcuff him. Doc. 25-2 at 2; Doc. 1 at 5. Thomas was then escorted to booking and placed in the restraint chair for about an hour. *Id.*

Thomas requested Tylenol or to be taken to medical, but did not visit medical until the next day (a scheduled January 12, 2021, visit to receive a tuberculosis vaccination). Doc. 25-3 at 1. He complained about the attack, received a physical examination, and was taken for an x-ray that day. *Id.* The x-ray results came back the same day and did not reveal any injury. *Id.*

**Excessive Force Against Pretrial Detainees**

---

[3] In his complaint, the plaintiff did not mention turning to face Smotherman and taking an aggressive step. However, he did not deny that he had done so in his response to the instant summary judgment motion. In any event, Thomas had initially turned his back on Smotherman, who then entered the cell to get Thomas to comply with the order to kneel. It is undisputed that the two were facing each other during the altercation; hence, Thomas turned around to face Smotherman, rather than complying with the orders (to turn around, put his hands behind his back, and kneel).

[4] The plaintiff alleged that Thomas struck him several more times after the initial strike to the face. Smotherman does not mention any additional strikes in his affidavit, only pushing Thomas' face into the wall.

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 395, n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). To state a claim of excessive force, a pretrial detainee must allege: (1) that the defendant had a "purposeful, knowing, or possible a reckless state of mind" as to his "physical acts – *i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world," and (2) that the defendant's intentional actions in the physical world were *objectively unreasonable*. *Id.* at 2472. Put another way, the plaintiff must allege that the defendant knowingly or purposefully used force – and that the force was objectively unreasonable. *Id*. at 2473.

Objective reasonableness turns on the "facts and circumstances of each particular case," from the perspective of a reasonable officer at the scene, including what that officer knew at the time – and without the crystal clarity of hindsight. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The "management by a few guards of large numbers of prisoners" in a jail "may require and justify the occasional use of a degree of intentional force." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (citing *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973)). The court must also consider the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Indeed, "[r]unning a [jail] is an inordinately difficult undertaking," *Turner v. Safley,* 482 U.S. 78, 84–85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and "safety and order at these institutions

requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326, 132 S.Ct. 1510, 1515, 182 L.Ed.2d 566 (2012).  Officers facing disturbances in a jail "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S., at 397, 109 S.Ct. 1865.  A judge, who has ample time to reflect on the matter in the solitude of chambers, must be mindful of these considerations when deciding whether an officer's use of force was objectively reasonable.

Even in the absence of an expressed intent to punish, a pretrial detainee may nonetheless prove a claim of excessive force by showing that the guard's actions are not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation to that purpose." *Bell*, 441 U.S. at 561, *see also Block v. Rutherford*, 468 U.S. 576, 585-586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984).  In deciding whether the force used was objectively reasonable, the court may consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473.  This list is not exhaustive, merely illustrative.  *Id*.

## Discussion

In the present case, the force used was not excessive.   Smotherman knowingly used force; hence, the outcome of this case turns on whether his use of force was reasonable. *Kingsley, supra*, at 2473.  The court finds that it was.

Anthony Maquis Thomas had a history of defiant and violent behavior towards prison staff.

He was angry and defiant regarding the defendants' orders, and he disobeyed them during pill call. In light of Thomas' agitation, to ensure officer safety, Sgt. Smotherman ordered Thomas to turn around, put his hands behind his back, and kneel.[5] Thomas partially complied (by turning around and putting his hands behind his back), but he physically and verbally refused to kneel, as ordered. Prison guards may use reasonable force to compel inmates to comply with lawful orders, but must stop using force once the inmate submits. *Aucoin v. Cupil*, 958 F.3d 379, 380 (5th Cir. 2020). That is what happened in the present case. Sgt. Smotherman attempted to compel Thomas to kneel (by kicking his leg), but failed. Thomas then retreated into his cell and turned to face the guards. As Smotherman entered the cell, he heard his taser drop to the floor.

Thomas' access to the unsecured taser posed an immediate and profound safety risk to Smotherman and Officer Goodwin – and, potentially, others. Smotherman faced a defiant inmate with a history of violence against staff – and that inmate had direct access to a taser – a weapon capable of incapacitating prison guards. To quickly alleviate that risk, Smotherman struck Thomas three times in the cheek, tried to take him down, and, when that failed, slammed him face-first into the cell wall and struck him two or three more times.[6] During the brief struggle, Officer Goodwin retrieved the taser and returned it to Smotherman, who secured it in its holster. Once the taser was secure, Thomas became compliant, was handcuffed, then placed in a restraint chair until he could calm down. He was released back to his cell after about an hour in the restraint chair. Thomas' injuries were minor: (1) a knot on his left eye; (2) a swollen jaw; (3) a painful ear; (4) a headache; (5) a hurt leg; and (6) a hurt

---

[5] Thomas mentions that Smotherman put on gloves at this point. Given Thomas' words and actions immediately prior, it appears that Smotherman donned the gloves in case the defiant Thomas physically engaged the officers, which he did.

[6] Thomas has not alleged that either officer used force against him once he submitted and had been restrained. Smotherman stated that he struck Thomas in the face only once, then slammed him into the wall.

elbow.[7] The swelling persisted for at least four days, and he suffered difficulty swallowing, dizziness, and lightheadedness.

All of Smotherman's actions were objectively reasonable. Smotherman faced a disturbance in the jail and made "[a] split-second judgment[] – in circumstances that were tense, uncertain, and rapidly evolving." *Graham*, 490 U.S., at 397, 109 S.Ct. 1865. The force Smotherman used was needed to gain Thomas's immediate compliance to ensure he did not get the taser – which would have posed an enormous security threat. Thomas' injuries were minor. Smotherman reasonably perceived Thomas' access to a taser to be a serious threat – especially based upon his past violent and disruptive behavior regarding staff. Thomas also resisted the guards' efforts to maintain security by repeatedly disobeying them about returning to his cell and, later, refusing to kneel when ordered and turning to face the two guards. He then entered into a physical altercation with Smotherman – continuing to resist until the taser was secured. Smotherman tempered the force he used and ended the use of force upon Thomas' compliance. Given the presence of the unsecured taser, Smotherman's actions were objectively reasonable under the circumstances, and Thomas' claims regarding excessive force are without merit.

## No County Liability

Thomas has also named Lee County, Mississippi, as a defendant in this case. To establish municipal or county liability under § 1983, a plaintiff must demonstrate that an official policy or custom caused the constitutional violation alleged. *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995); *Colle v. Brazos County, Texas*, 981 F.2d 237, 244 (5th Cir. 1993). Thomas has alleged no facts to show that any policy-making officials for Lee County implemented an official policy that

---

[7] *See Siglar v. Hightower*, 112 F.3d 191, 193(5th Cir. 1997) (a sore, bruised ear lasting for three days — was *de minimis*.)

caused his alleged constitutional violation; nor has he established a persistent pattern of conduct by city or county officials that caused the alleged violation. In a § 1983 action, liability may not be imposed upon a governmental entity on a theory of *respondeat superior* for the actions of non-policy making government employees. *Monell*, 436 U.S. at 690-94; *see Doe v. Rains County Independent School District*, 66 F.3d 1402, 1409 (5th Cir. 1995); *Brown v. Bryan County, Texas*, 53 F.3d 1410, 1418 (5th Cir. 1995). Thomas alleges no facts showing the direct involvement of policy-making officials of the County in the alleged violation of his constitutional rights; as such, Lee County will be dismissed with prejudice from this case.

## Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 1st day of June, 2023.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE